**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**JOHN H. ALLEN**                                                                                        **PLAINTIFF**

**V.                              CASE NO. 3:11CV00164 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                           **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff John H. Allen appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      Background**

On July 28, 2008, Mr. Allen filed for DIB and SSI alleging disability beginning on January 1, 2005, due to heart problems. (Tr. 79, 83, 117-123) Later, Mr. Allen amended his alleged disability onset date to July 11, 2008. (Tr. 39-40) His claims were denied initially and upon reconsideration. At his request, an Administrative Law Judge[1] ("ALJ") held a hearing on April 7, 2010, at which Mr. Allen appeared with his lawyer. (Tr. 32) At the hearing, the ALJ heard testimony from Mr. Allen, his wife Evelyn Allen, and a vocational expert ("VE"). (Tr. 32-72)

---

[1] The Honorable David J. Manley.

The ALJ issued a decision on May 27, 2010, finding that Mr. Allen was not disabled under the Act. (Tr. 14-26) On June 15, 2011, the Appeals Council denied Mr. Allen's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4)

Mr. Allen was forty-five years old at the time of the hearing. (Tr. 37) He was 5'4" tall and weighed approximately 218 pounds. (Tr. 40) He had graduated from high school and had attended vocational school. (Tr. 37) He had medical insurance through his wife. That insurance paid for some part of Mr. Allen's medications, but his wife paid for some medications out-of-pocket. (Tr. 43)

At the administrative hearing, the ALJ described to the VE a hypothetical individual with combined exertional and nonexertional limitations. (Tr. 65) The hypothetical individual could perform sedentary work; could occasionally climb ramps or stairs; could never climb ladders, ropes, or scaffolds; and should avoid exposure to extreme heat and cold, fumes, odors, dust, gases, poor ventilation, and hazards. (Tr. 65-66) The VE testified that a person with those limitations at Mr. Allen's age and with his level of education could perform the jobs of document preparer and telephone quotation clerk. (Tr. 67)

## II.  Decision of the Administrative Law Judge

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a

severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

The ALJ found that Mr. Allen had not engaged in substantial gainful activity since his amended onset date. (Tr. 16) And he found that Mr. Allen had several severe impairments: malignant essential hypertension, cardiomyopathy, chronic heart failure, arteriosclerotic cardiovascular disease, obstructive sleep apnea, insulin-dependent diabetes mellitus, and obesity. (Tr. 16) The ALJ also found, however, that Mr. Allen did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 16-17)

The ALJ determined that Mr. Allen had the residual functional capacity ("RFC") to perform sedentary work and could stand or walk for at least two hours in an eight-hour

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

workday and could sit for about six hours in an eight-hour workday, with normal breaks.[3] Like the hypothetical person described in the question to the VE, Mr. Allen could only occasionally climb, balance, stoop, kneel, crouch, and crawl, but he could never climb ladders, ropes, or scaffolds. Mr. Allen's impairments indicated that he should avoid concentrated exposure to temperature extremes, fumes, odors, dusts, gases, and poor ventilation. He should also avoid moderate exposure to safety hazards such as unprotected heights and moving machinery. (Tr. 17-25)

The ALJ determined that Mr. Allen's RFC would preclude performance of his past relevant work. (Tr. 25) After considering VE's testimony, however, the ALJ found that Mr. Allen could perform the jobs of document preparer and telephone quotation clerk and that these jobs existed in significant numbers in the national economy. (Tr. 25-26) Accordingly, the ALJ found that Mr. Allen was not disabled. (Tr. 26)

**III.    Analysis**

    A.    *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to

---

[3] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    B.    *Plaintiff's Arguments for Reversal*

Mr. Allen claims that the ALJ's findings are not supported by substantial evidence because: (1) the ALJ failed to consider the combined effects of Mr. Allen's impairments when assessing his RFC; (2) the ALJ improperly used Mr. Allen's daily activities to discredit his testimony; and (3) the ALJ erred in concluding that Mr. Allen did not meet Impairment Listing 4.02 due to chronic heart failure. (#10)

    C.    *Residual Functional Capacity*

The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (citations omitted) But at least some medical evidence must support the RFC determination. *Id*.

Mr. Allen argues that the ALJ failed to consider the combined effects of his impairments. (#10, p. 7-8) In his decision, however, the ALJ specifically defined disability to include consideration of a combination of impairments. (Tr. 14) In fact, the

ALJ noted that consideration of the combination of impairments is required at both step 2 and step 3 of the sequential analysis (Tr. 15-16), and he specifically noted that he had considered the combined effects of obesity and Mr. Allen's other impairments. (Tr. 22-23)  When formulating the hypothetical posed to the VE at the hearing, the ALJ specified that the hypothetical individual had a combination of exertional and nonexertional limitations. (Tr. 65)  The ALJ also stated that, when determining RFC, he had considered all of the limiting effects of Mr. Allen's impairments. (Tr. 17)

The resulting RFC appears to incorporate the combined effects of all of Mr. Allen's symptoms and impairments.  Mr. Allen has not alleged a single additional limitation to his RFC that would arise absent the ALJ's alleged failure to consider the combined effects of his impairments.  Mr. Allen's only support for his argument is that the ALJ dismissed the serious nature of his uncontrolled diabetes. (#10, p. 7-8)  The ALJ, however, found that Mr. Allen's diabetes was a severe impairment. (Tr. 16)

Mr. Allen argues in his brief that his diabetes is uncontrolled, and that the record is "replete with documentation" that his blood-sugar levels ranged from the 200s to the 400s. (#10, p. 7)  Yet he cites only a single medical record to support this argument.  The one supporting medical note shows Mr. Allen's blood-sugar level for a single, four-day hospital stay.[4] (Tr. 590)  This hospital stay occurred two months after the ALJ issued his

---

[4] The record contains other instances of high blood-sugar readings, but Mr. Allen did not cite any.

decision. (Tr. 11, 589-591) And the notes from this hospital visit indicate that Mr. Allen admitted that he had not been compliant in taking his diabetes medication. (Tr. 590) Regardless, Mr. Allen testified at the hearing that his blood-sugar reading was usually 110, which is within a normal range. (Tr. 49) Mr. Allen admitted that his blood-sugar was elevated the morning of the hearing because he had eaten some things he should not have eaten. (Tr. 41, 49) Mr. Allen's wife testified that she fussed at him quite a bit for failing to comply with his diabetes diet. (Tr. 55)

The ALJ discussed the RFC determination in detail. (Tr. 17-25) He ultimately found that Mr. Allen was extremely limited by his impairments. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("'Sedentary work' represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations."). The ALJ discussed the medical evidence in depth when making this determination.

After reviewing the record, it is clear the ALJ's RFC determination was supported by substantial evidence. The primary evidence supporting additional limitations was Mr. Allen's subjective complaints, which the ALJ found to be less than fully credible. (Tr. 23)

    D.    *Mr. Allen's Daily Activities*

Mr. Allen argues that the ALJ wrongly used his daily activities to discredit him. (#10, p. 8-9) He does not identify any allegations the ALJ discredited. And he does not

cite any evidence to support his conclusory argument for reversal on this ground. (#10, p. 8-9)

The ALJ evaluated Mr. Allen's subjective allegations under the guidelines set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), Social Security Ruling 96-7p, and other relevant authority. He concluded that Mr. Allen's allegations were not fully credible. (Tr. 23-24) The ALJ acknowledged that he was required to consider a number of specific factors, including Mr. Allen's daily activities, when assessing Mr. Allen's credibility. (Tr. 23) See *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003) (objective medical evidence, prior work history, daily activities, duration, frequency, and intensity of pain, precipitating or aggravating factors, dosage, effectiveness, and side effects of medication, and functional restrictions are all factors to consider when assessing the credibility of a claimant's subjective allegations). Exclusive use of Mr. Allen's daily activities to discredit him would have been error. That clearly was not the case here.

First, the ALJ considered the medical record. (Tr. 18-22) He then considered the precipitating and aggravating factors for Mr. Allen's impairments. (Tr. 23) Also, he considered the frequency of medical treatment, Mr. Allen's medications, and the lack of adverse side effects from those medications. (Tr. 23) The ALJ also considered the opinions of the medical sources. (Tr. 24) He noted Mr. Allen's good work history. (Tr.

24)  When considering Mr. Allen's daily activities, the ALJ noted inconsistencies between Mr. Allen's testimony and the functional reports he provided. (Tr. 24)

Mr. Allen testified that he could not perform work that required sitting all day, answering the telephone, and occasionally getting up to pull a file, due to shortness of breath. (Tr. 44, 46)  He claimed that he could sit at home and put a puzzle together for maybe ten to twenty minutes before becoming short-winded. (Tr. 46)

A year before the administrative hearing, Mr. Allen could walk eight or nine miles in a three-hour period. (Tr. 41, 52)  After being diagnosed with sleep apnea and diabetes, Mr. Allen claimed he struggled to walk a mile. (Tr. 52)  He would still walk a mile with breaks, however, every day that the weather was pleasant. (Tr. 42)  Treating sources recommended that Mr. Allen walk at least one mile daily. (Tr. 386)

The ALJ may discount subjective complaints if there are inconsistencies in the record as a whole.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).  In this case, the ALJ considered Mr. Allen's daily activities as one factor in the credibility determination and gave good reasons for discounting Mr. Allen's more extreme subjective complaints.  The credibility findings are entitled to deference because they are supported by substantial evidence in the record.  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

E.   *Impairment Listing*

Mr. Allen argues that he met Impairment Listing 4.02 under 20 C.F.R. Part 404, Subpart P, Appendix 1, for chronic heart failure.  (#10, p. 9-13)  A claimant has the burden of proving that an impairment (or combination of impairments) meets or equals a Listing.  *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).  "To meet a listing, an impairment must meet all of the listing's specified criteria."  *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted).  Here, to support his argument, Mr. Allen notes one instance, on March 23, 2010, where his heart ejection fraction was 25-30%.[5]  (#10, p. 11-12)  (Tr. 564)

The ALJ considered Listing 4.02 at step three of the sequential analysis.  (Tr. 17) He specifically noted Mr. Allen's March 23, 2010 limited ejection fraction percentage. (Tr. 21)  He also noted ejection fraction readings taken on September 18, 2007, in July, 2008, on September 30, 2008, and on December 31, 2008.  (Tr. 18-20)  The ALJ found that, despite the low ejection fraction readings, the symptoms of Mr. Allen's heart failure did not:  (1) very seriously limit his ability to independently initiate, sustain, or complete activities of daily living; (2) preclude the performance of an exercise test due to significant risk; or (3) cause three or more separate episodes of acute congestive heart failure within a consecutive twelve month period, requiring acute extended physician

---

[5] Systolic failure with an ejection fraction of 30% or less during a period of stability is one of two alternate Subsection A requirements a claimant must prove to meet Listing 4.02.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02A.

intervention. (Tr. 21-22) Evidence of one of these conditions is required to meet Subsection B of Listing 4.02. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02B. A claimant must meet both Subsection A and Subsection B to meet Listing 4.02.

Mr. Allen appears to concede that he did not meet the ejection fraction requirement by arguing that the March 23, 2010 ejection fraction reading required the ALJ to develop the record further. (#10, p. 12-13) It is not clear what information Mr. Allen would have had the ALJ develop. The cited ejection fraction reading occurred in March, 2010. Mr. Allen's administrative hearing was in April, 2010. Is Mr. Allen arguing that the ALJ should have sent him for testing after the hearing? If so, the argument is wholly unpersuasive because the record in this case actually contains ejection fraction readings taken after the administrative hearing.

On July 19, 2010, Mr. Allen underwent a Lexiscan thallium myocardial perfusion scan. (Tr. 622) The scan evidenced an ejection fraction of 45% at rest and 47% after Lexiscan. (Tr. 622-623) Mr. Allen also underwent an echocardiogram which resulted in an estimated ejection fraction of 35-40%. (Tr. 624-626) While these findings support the severe nature of Mr. Allen's heart conditions, they also show that he did not meet the first requirement for Listing 4.02.

Mr. Allen makes a weaker argument that he met Subsection B of Listing 4.02. He tepidly argues that he could not perform a stress test, which is similar to one Subsection B

requirement. (#10, p. 12)  The same medical record cited to support this assertion, however, explicitly recommended Mr. Allen complete an outpatient stress test. (Tr. 426)

Mr. Allen also notes his testimony regarding his shortness of breath. (#10, p. 12-13)  As discussed, the ALJ correctly found the testimony to be less than fully credible. See Section III.D. *supra*.  Regardless, Listing 4.02 clearly requires medical documentation, not subjective testimony, to prove a claimant met the Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02.

The record established that Mr. Allen suffered from severe chronic heart failure. But he did not meet his burden of proving that he met Listing 4.02.

## IV.     Conclusion

The Court has reviewed all of the evidence in the record, including the medical evidence, the assessment of the consulting physician, and the hearing transcript.  There is sufficient evidence in the record as a whole to support the Commissioner's determination that John H. Allen retained the residual functional capacity to perform jobs existing in significant numbers in the economy.

Accordingly, his appeal is DENIED, and the Clerk of Court is directed to close the case, this 15th day of June, 2012.

_____
UNITED STATES MAGISTRATE JUDGE